**Opinion filed September 22, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00075-CV
_____

## IN THE INTEREST OF F.C., D.C., AND H.C., CHILDREN

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 10286-CX**

## MEMORANDUM OPINION

This is an appeal from an order in which the trial court terminated the parental rights of the mother and the father of the children at issue: F.C., D.C., and H.C. Only the father appealed. On appeal, he presents two issues in which he challenges the sufficiency of the evidence to support the trial court's findings. We affirm the trial court's order of termination.

### I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West 2022). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent

has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O). Specifically, the trial court found (1) that Appellant had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being and (2) that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parents for abuse or neglect. *See id.* § 161.001(b)(1)(E), (O). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the children.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the trial court's finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). We note that the trial court is the sole arbiter of the credibility and demeanor of witnesses. *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (citing *In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005)).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis.

2

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

## II. *Evidence Presented at Trial*

The record shows that F.C., D.C., and H.C. were in Appellant's care when this case began. The children were ages eleven (F.C.), ten (D.C.), and nine (H.C.) at that time and, for the most part, had been raised by Appellant without their mother's assistance. The children's mother left them shortly after H.C. was born.

Appellant and his daughters had been involved with the Department multiple times prior to this case, and they had also been involved with CPS in Arizona. Two intakes precipitated the Department's investigation of Appellant's conduct and the ultimate removal of the children from Appellant's care. The allegations were that Appellant sexually abused H.C., that Appellant drank excessively, and that F.C. was malnourished and had consistently poor hygiene.

The allegation of sexual abuse stemmed from Appellant's own statements. He had reported that he "had woken up on multiple occasions with his hands on [H.C.'s] private area." Appellant believed that H.C. "put his hand there while he was sleeping." Appellant reported that, one time, he was "blackout drunk" and woke up

in "that position." Appellant also reported that H.C. had written a note in which she stated, "I want a d--k." Appellant testified that he reported these incidents to a counselor because he was concerned about H.C.'s sexual behavior and wanted to get help for her.

During the intake and removal process, all three girls spoke with a forensic interviewer at the Child Advocacy Center. None of the girls made an outcry of sexual abuse, but F.C. and D.C. "shut down" when asked about "body safety." D.C. started crying and refused to talk any further. At trial, the Department did not present any additional evidence to indicate that Appellant had sexually abused the children, and Appellant denied having ever touched them in that manner.

However, by all accounts, Appellant drank excessively. F.C. said that her father drank alcohol and yelled a lot, which scared her. F.C. frequently spoke to school personnel about Appellant's alcohol use; she said that sometimes he would pass out and not know where he was. F.C. also mentioned the lack of support and "real meals" at home. H.C. commented that Appellant "is a lazy drunk man" who "drinks all the time and . . . yells when he drinks." Appellant's alcohol abuse was a major concern and was the root of most of the Department's previous interactions with Appellant and his children. Despite those previous interactions and the fact that he was the primary caregiver for his children, Appellant failed to remain sober.

Appellant acknowledged that he has a drinking problem and that, while the children were in his care, he drank every night. Appellant testified that he drank an average of four to six shots every night. Appellant continued to drink for many months after the children were removed from his care; he testified that he last consumed alcohol several weeks before trial. In addition to alcohol, Appellant also used marihuana and continued to do so while this case was pending below. He testified that he had last used marihuana the day before trial. Appellant did not

believe that his excessive drinking made him "a worse parent," nor did he think that his children "should have been taken because of [his] drinking."

In addition to Appellant's use of alcohol and marihuana, Appellant failed to comply with other provisions of his family service plan. For example, he failed to exercise any visitation with his children from May to September, and in November, the trial court suspended his visitation. Furthermore, the record shows that Appellant was convicted of the offense of assault family violence because of an incident that occurred after the children were removed from his care. He also failed to attend counseling and a substance abuse assessment as required.

The personal hygiene of all three children was awful and was a major concern to school personnel and the Department. Appellant, however, claimed to be unaware of any problem with the children's hygiene until the Department "made it a concern." Testimony showed that all three children arrived at school very dirty, with dirty matted hair. They often wore dirty, and sometimes ill-fitting, clothes.

All three children had behavioral issues, especially H.C. H.C. refused to do her schoolwork or stay in her chair at school. She would crawl on the floor, hissing and pawing like a cat, and she often reverted to babytalk. H.C. would sometimes crawl into a teacher's lap and "just cry and sob," stating that she was worried about Appellant "because he had started drinking again."

The children's behaviors improved after they were removed from Appellant's care and placed in foster care. Although all three children were originally placed together, H.C. was ultimately placed in a therapeutic foster home after having to be hospitalized twice because of her extreme behaviors. The children had weekly Zoom visits and a monthly in-person visit with each other. The foster parents with whom F.C. and D.C. were placed wished to adopt F.C. and D.C. and also expressed an interest in adopting H.C. if she gets the help that she needs. Even though the children love their father and do not want his parental rights to be terminated, the

5

Departments' goal for the children is for them to be adopted—"ideally" together and by the same adoptive parents. The children's permanency case manager believed that, although termination would be traumatic for the children, it would nevertheless be in the children's best interest.

The permanency case manager for 2INgage, along with the CASA worker who was appointed to be the children's guardian ad litem, believed that it would be in the children's best interest for Appellant's parental rights to be terminated. The children's attorney ad litem did not express any view on the children's best interest, but she informed the trial court that the children "do not wish for their father's parental rights to be terminated." The trial court, upon request, conferred with F.C. in chambers.

Appellant did not seek to have the children returned to him on the day of trial. Instead, he asked for more time to comply with his services, to work on his sobriety, and to obtain better housing so that the children could be returned to him in the future. Appellant testified that he loves his children with all his heart. According to Appellant, he did not complete his services prior to trial because he gave up on himself for a while.

### III. *Analysis*

#### A. *Endangering Conduct*

In his first issue, Appellant challenges the sufficiency of the evidence to support the trial court's findings under grounds (E) and (O). Here, we need only address his challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct need not be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use by a parent may constitute evidence of endangerment. *Id.* Furthermore, domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Here, based upon evidence that, despite the Department's previous efforts regarding Appellant's sobriety, Appellant used marihuana and drank alcohol excessively on a daily basis while the children were in his care—sometimes drinking to the point of passing out and waking up with his hands on H.C.'s private area; that Appellant neglected the basic hygienic needs of his children; and that Appellant engaged in domestic violence, the trial court could have reasonably found by clear and convincing evidence that Appellant had engaged in a course of conduct that endangered his children. Therefore, we hold that the evidence is legally and factually sufficient to uphold the trial court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's first issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not address Appellant's argument with respect to subsection (O). *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35; *see also* TEX. R. APP. P. 47.1.

B. *Best Interest*

In his second issue, Appellant challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights would be in the best interest of the children.

With respect to the children's best interest, the evidence, as set forth above, shows that, after the children were removed, Appellant continued to use marihuana and drink excessively, engaged in domestic violence, failed to complete the services that were required for the children to be returned to him, and failed to regularly visit the children. At the time of the termination hearing, the children were all thriving in the care of their foster parents, and all of their needs were being met. Appellant had not demonstrated that he could provide a safe, stable, drug-free and alcohol-free home for the children. Furthermore, although the children did not want their father's parental rights to be terminated, both the permanency case manager and the children's guardian ad litem believed that it would be in the children's best interest to terminate Appellant's parental rights.

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *A.B.*, 437 S.W.3d at 503. Giving due deference to the trial court in this regard, we hold that, in light of the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in the best interest of each of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of those involved, the plans for the children by the Department, Appellant's failure to provide a safe and stable home for the children, Appellant's history of domestic violence, Appellant's ongoing and chronic alcohol and drug use, and Appellant's failure to comprehend that his excessive use of alcohol endangered

8

his children, we further hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of F.C., D.C. and H.C. *See id.* We defer to the trial court's finding as to the children's best interest, *see C.H.*, 89 S.W.3d at 27, and we cannot hold in this case that the trial court's finding as to best interest is not supported by clear and convincing evidence. Accordingly, we overrule Appellant's second issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.

W. STACY TROTTER
JUSTICE

September 22, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.